--------------------------------------------------------x  Chapter 11

In re: :

           : Case No. 11-15719

CARDINAL FASTENER & SPECIALTY CO.,:

INC.,          : Judge Randolph Baxter

           :

      Debtor. :

-------------------------------------------------------- x

### APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION, PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(A) AND 6003(A), FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY LEAGUE PARK ADVISORS LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER, *NUNC PRO TUNC* AS OF THE PETITION DATE

Cardinal Fastener & Specialty Co., Inc. ("Cardinal" or "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Case"), by and through its undersigned proposed counsel, and pursuant *inter alia* to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),[1] and Rules 2014(a) and 6003(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby apply (the "Application") for the entry of an order authorizing the Debtor to retain and employ League Park Advisors LLC ("League Park") as financial adviser and investment banker in this Case. In further support of this Application, the Debtor submits the *Affidavit of J.W. Sean Dorsey in Support of the Application of the Debtor and Debtor-in-Possession, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 6003(a), for the Entry of an Order Authorizing the Debtor to Retain and Employ League Park Advisors LLC as Financial Advisor and Investment Banker, Nunc Pro Tunc as of the Petition Date* (the "Dorsey Affidavit"), attached hereto as Exhibit A and incorporated by reference herein, and respectfully represent as follows:

4074268.1

## JURISDICTION

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334.   Consideration of the Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 327(a), 328, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 6003(a).

## BACKGROUND

4.      On the Petition Date, Cardinal commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      Cardinal is continuing in possession of its properties and assets and is operating and managing its business as debtor-in-possession, pursuant to Sections 1107 and 1108.   No trustee, examiner, or official committee of unsecured creditors has been appointed in Cardinal's chapter 11 case (the "Case").

### *Cardinal and Cardinal's Business*

6.      Cardinal, founded in 1983, is the largest fastener manufacturer of large diameter, hot forged bolts in North America.   Using American-made steel, Cardinal supplies all grades, head styles, and diameters.   Cardinal's customer base consists of certain "legacy" industries, primarily the construction, original equipment manufacturing, and oil and gas industries. Cardinal also supplies goods for maintenance and repair operations.   Cardinal is one of the few manufacturers that complies with all guidelines for these safety critical products by manufacturing with a flat bearing surface. Cardinal's manufacturing process includes the

---

[1] Unless otherwise defined or stated herein, all "Section" references are to the Bankruptcy Code.

performance of magnetic particle testing in its in-house A2LA (American Association for Laboratory Accreditation) accredited laboratory.

7.     Recognizing the rapidly growing "green" energy sector, in 2007 Cardinal began to manufacture fasteners for a wind turbine builder in need of parts quickly.  By January 2009, Cardinal was the world's first fastener manufacturer to obtain ISO 9001:2008 certification—its customers' metric for quality management and performance in this field.  Cardinal is now approved by most of the wind turbine manufacturers as either their sole or primary supplier of safety critical fasteners. Cardinal was also named the 2010 "Supplier of the Year" by AWEA (American Wind Energy Association).  Despite adversity, described below, during 2010 Cardinal's overall business grew by 38%, with its wind business alone growing by over 200%. In 2011, Cardinal's overall business was experiencing 50% growth.

8.     Cardinal's reputation for quality products was further acknowledged in 2009, when then President-Elect Barack Obama, just four days before his inauguration, spent a day visiting with Cardinal and its employees.  He recognized Cardinal Fastener as an "iconic," family-owned manufacturer, with three generations involved, whose "[bolts] are used everywhere . . . from coast to coast . . . in the Statue of Liberty and in the Golden Gate Bridge." (Transcript of President-Elect Barack Obama, January 19, 2009, available at: http://www.clevelandleader.com/node/8587.)  Shortly thereafter Cardinal become a national face for American manufacturing and job growth.

## RELIEF REQUESTED

9.     By the Application, the Debtor, pursuant to sections 327(a), 328, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 6003(a) seeks to employ and retain League Park as its financial advisor and investment banker in this Case.

## RETENTION OF LEAGUE PARK

10.     The Debtor seeks to retain League Park as their financial advisor and investment banker because of League Park's extensive experience with financial restructuring of troubled companies and League Park's experience in placing financing for troubled companies. The Debtor believes that League Park is both well-qualified and able to assist it in this Case in an efficient and timely manner.

11.     As of May 13, 2011, Debtor began working with League Park to provide financial advisory services to the Debtor. On June 30, 2011, the Debtor and League Park executed an engagement letter (the "Engagement Letter"), a true and correct copy of which is attached hereto as Exhibit B.[2] Given the relatively short period of time in which League Park has been assisting the Debtor, League Park has developed an impressive and thorough understanding of the Debtor's operations, finance, and systems. League Park also possesses significant expertise in navigating companies through chapter 11 – such knowledge being essential to the Debtor's present operations given management's initial unfamiliarity with the requirements and mechanics of the chapter 11 process. This experience and knowledge will be valuable to the Debtor in its efforts to formulate a chapter 11 plan of reorganization, or other appropriate exit strategy in the Case, and to meet the daily challenges presented by operating in chapter 11. Accordingly, the Debtor wishes to retain League Park to provide financial advisory services during the Case.

### Services to be Provided by League Park

12.     League Park will provide such consulting and advisory services as League Park and the Debtor deem appropriate and feasible in order to advise the Debtor in the course of the

Case.  In particular, League Park will prepare a thorough assessment of the Debtor's financial condition, cash flow, credit worthiness and viability.  Based upon the work performed, League Park will evaluate the feasibility of the Debtor's business plan, assist the Debtor in raising DIP and/or exit financing or assist with any sales of the Debtor's assets.  The assessment will focus on determining if sufficient liquidity exists to operate the business in accordance with its business plan with an appropriate level of risk.  More specifically, the services provided by League Park will and have included the following:

(a)     Preparation and review of cash flow forecasts to be performed in conjunction with management for time periods to be specified by the Debtor;

(b)     Reviews of the history of negotiations and available documents and correspondence involving the Debtor regarding its possible acquisition to encompass questions that will be specified by the Debtor;

(c)     Provide general strategic consulting to the Debtor regarding restructuring alternatives available to the company;

(d)     Prepare such reports as requested by management documenting the results of our investigations, cash flow forecasts and other consulting services;

(e)     Compile, update and supplement materials to be used in marketing a proposed sale, liquidation, recapitalization, private placement, and/or debtor-in-possession financing (each a "Transaction") to potential parties as approved by the Debtor;

(f)     Identify and contact such potential parties as approved by the Debtor;

(g)     Prepare and negotiate confidentiality agreements to be entered into with such potential parties;

(h)     Prepare management presentations for certain parties as selected by the Debtor;

---

2     Nothing contained herein is intended to modify or otherwise alter the terms of the Engagement Letter.  To the extent that there is a conflict between this Application and the Engagement Letter, the terms of the Engagement Letter control.

<blockquote>

(i)    Compile, update, and supplement due diligence and other data room materials; and

(j)    Negotiate the terms and conditions of a Transaction.
</blockquote>

**Disinterestedness**

13.    Based on the Dorsey Affidavit, as well as League Park's review of is applicable books and records, League Park is a "disinterested person," as such term is defined pursuant to Section 101(14), as modified by Section 1107(b).  In particular, League Park:

<blockquote>

(a)    is not a creditor, an equity security holder, or an insider of the Debtor;

(b)    is not and was not within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

(c)    does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.
</blockquote>

14.    In addition, based upon the Dorsey Affidavit, League Park neither holds nor represents an interest adverse to the Debtor within the meaning of Sections 327(a) or 328.

15.    It is League Park's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new relevant facts or relationships are discovered or arise, League Park will promptly file the appropriate supplemental affidavit(s) or other disclosures pursuant to Bankruptcy Rule 2014(a).

**Terms of Retention**

16.    The Debtor understands that League Park intends to apply to this Court for allowances of compensation and reimbursement of expenses for financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules, Orders of this Court and guidelines established by the United

States Trustee. League Park will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

17.     The proposed compensation structure consists of a nonrefundable cash retainer of $5,000 per month due at engagement and on the last day of each month and $500 per hour for time spent to prepare for and provide testimony during a legal proceeding. Additionally, upon completion of a Transaction League Park is entitled to a cash fee as further detailed in the Engagement Letter.

18.     League Park also shall seek reimbursement of its customary out-of-pocket expenses incurred in connection with the Cases. League Park shall seek allowance and payment of all fees and expenses pursuant to all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.

### Pre-Petition Payments and Retainer

19.     League Park received a retainer payment from Debtor in the amount of $5,000.00 (the "Prepetition Retainer") on June 2, 2011, which Prepetition Retainer was intended for restructuring and related services. On June 10, 2011, prior to the filing of the chapter 11 petition, League Park used the full amount of the Prepetition Retainer to pay for fees and expenses accrued through June 10, 2011.

### Indemnification Provisions

20.     As set forth in the Engagement Letter, Debtor agrees to indemnify and hold harmless League Park and its affiliates and each director, officer, employee, agent, manager, member, and controlling person of League Park from and against any and all losses, claims, damages, expenses, costs, and liabilities (including reasonable attorneys' fees) (collectively, "Liabilities") resulting directly or indirectly from any threatened or pending litigation, action, claim, proceeding or dispute, including security holder actions as specifically described in

4074268.1                                    - 7 -

Schedule A to the Engagement Letter. (Engagement Letter Schedule A.) The indemnification excludes Liabilities which are judicially determined to have resulted primarily and directly from the willful misconduct, criminal act or gross negligence of any indemnitee. The Debtor believes that the foregoing indemnification provisions are reasonable, customary, and appropriate.

## MEMORANDUM OF LAW

21.     Because this Application presents no novel issues of law and the authorities relied upon are stated herein, the Debtor respectfully request that this Court waive the requirement contained in Local Bankruptcy Rule 9013-1(a) that the Debtor files a separate memorandum of law in support of this Application.

## NOTICE

22.     Notice of the Motion has been given to (a) Notice of this Motion has been given to (a) the Office of the United States Trustee; (b) Wells Fargo Bank, National Association and Grow America Fund, Inc., the secured creditors; (d) the Debtor's top 20 general unsecured creditors, and (e) parties who have filed a request for notice or notice of appearance as of the date of this Application. Debtor submits that, under the circumstances, no other or further notice need be given. The Debtor submits that, under the circumstances, no other or further notice need be given.

## NO PRIOR REQUEST

23.     No prior request for the relief sought in this Application has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: July 5, 2010        Respectfully submitted by:

<u>/s/ Rocco I. Debitetto</u>
Rocco I. Debitetto (0073878)
Emily W. Ladky (0085527)
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:   (216) 621-0150
Facsimile:    (216) 241-2824
E-Mail:        ridebitetto@hahnlaw.com
                eladky@hahnlaw.com

*Proposed Counsel for Debtor and*
*Debtor-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that true and correct copies of the foregoing were served upon the parties identified on the attached Service List on this 5th day of June 2011 by the method indicated.

      /s/ Rocco I. Debitetto
      *Proposed Counsel for Debtor and Debtor-in-Possession*

4074268.1

<u>**SERVICE LIST**</u>

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case and who were served by the Court's electronic noticing system:

- Nicholas Brannick     nicholas.brannick@ssd.com

- Rocco I. Debitetto     ridebitetto@hahnlaw.com, ridebitetto@yahoo.com;hlpcr@hahnlaw.com

- G. Christopher Meyer     christopher.meyer@ssd.com, ann.bell@ssd.com;cle_dckt@ssd.com

- Peter Morrison     peter.morrison@ssd.com, cle_dckt@ssd.com

- United States Trustee     (Registered address)@usdoj.gov

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case and who were served by United States Mail, postage prepaid:

| **DEBTORS** | **TRUSTEE** |
|---|---|
| Cardinal Fastener & Specialty Co., Inc. | Office of the United States Trustee |
| 5185 Richmond Road | 201 Superior Ave. East, Ste 441 |
| Bedford Heights, Ohio 44146 | Cleveland, OH 44114 |

### TOP 20 GENERAL UNSECURED CREDITORS

| | |
|---|---|
| Kreher Steel Company, LLC | Metal Improvement Company |
| 3218 Paysphere Circle | Box 223367 |
| Chicago, IL 60674 | Pittsburgh, PA 15251-2367 |
| | |
| Banner Service Corporation | Turret Steel Corp. |
| PO Box 88485 | c/o Larry Weir |
| Attn:  Credit Dept. | 105 Pine Street |
| Chicago, IL 60680 | Imperial, PA 15126-1142 |
| | |
| Pro Metals, LLC | MT Heat Treating |
| 631 Plum Street | 8665 Station Street |
| Aurora, IL 60506 | Mentor, OH 44060 |
| | |
| Earnest Machine Products | Chicago Steel and Iron |
| 12502 Plaza Drive | 300 E. Joe Orr Road |
| Parma, OH 44130 | Chicago Heights, IL 60411 |
| | |
| Jergens Industrial Supply | Amerada Hess Corporation |
| PO Box 931344 | PO Box 905243 |
| Cleveland, OH 44193 | Charlotte, NC 28290-5243 |

4074268.1

Wells Fargo Insurance Services USA
PO Box 601321
Charlotte, NC 28260-1321

Brite Metal Treating
2655 Harrison Avenue, SW
Canton, OH 44706

Illuminating Company
PO Box 3638
Akron, OH 44309-3638

Robert W. Boykin
8015 West Kenton Circle, Suite 220
Huntersville, NC 28078
John Reed
7700 Northfield Road
Walton Hills, OH 44146

Clico Products
PO Box 688
Hudson, OH 44236

Bedford Precision Products, Inc.
333 Northfield Road
Bedford, OH 44146

Jim Meathe
416 E. Paces Ferry Road
Atlanta, GA 30305

Al Adams
1900 E. Ninth Street, Suite 3200
Cleveland, OH 44114
John Boykin
8015 West Kenton Circle, Suite 220
Huntersville, NC 28078

## SECURED CREDITORS

Grow America Fund, Inc.
708 Third Avenue, Suite 710
New York, NY 10017

Small Business Administration
Cleveland District Office
1350 Euclid Avenue, Suite 211
Cleveland, OH 44115-1815

Wells Fargo Bank, National Association
299 S. Main Street, 6th Floor
Salt Lake City, UT 84111

4074268.1

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

```
-------------------------------------------------------x    Chapter 11
In re:                                                :
                                                      :     Case No. 11-15719
CARDINAL FASTENER & SPECIALTY CO., :
INC.,                                                 :     Judge Randolph Baxter
                                                      :
                        Debtor.                       :
-------------------------------------------------------- x
```

### AFFIDAVIT OF J.W. SEAN DORSEY IN SUPPORT OF THE APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION, PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(A) AND 6003(A), FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY LEAGUE PARK ADVISORS LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR, *NUNC PRO TUNC* AS OF THE PETITION DATE

```
STATE OF OHIO                    )
                                 )
COUNTY OF CUYAHOGA               )
```

Now comes J.W. Sean Dorsey, after having been first duly sworn according to law, and deposes and states under oath as follows:

1.      I am the Managing Director of the accounting, business consulting, and investment banking firm of League Park Advisors LLC ("League Park"), 25101 Chagrin Blvd, Suite 210, Cleveland, Ohio 44122.  This Affidavit is filed in support of the *Application of Debtor and Debtor-in-Possession, Pursuant to Sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rules 2014(A) and 6003(A), for the Entry of an Order Authorizing the Debtor to Retain and Employ League Park Advisors LLC, as Investment Banker, Nunc Pro Tunc as of the Petition Date* (the "Application") filed by the debtor and debtor-in-possession (the "Debtor").

2.      Neither I, nor any member, associate, or professional employee of League Park are a relative, as that term is defined under section 101(45) of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), of any judge of the United States Bankruptcy Court for the Northern District of Ohio, or of the United States Trustee for Region IX.

4075277.1

3.  Neither I, nor any member, associate, or professional employee of League Park are or have been so connected with any judge of the United States Bankruptcy Court for the Northern District of Ohio, the United States Trustee for Region IX, or any person employed by the United States Trustee for Region IX, so as to render the employment of League Park as financial advisor and investment banker for the Debtor improper under Bankruptcy Rules 5002 or 2014.

4.  Neither I, nor any member, associate, or professional employee of League Park have any connection with the Debtor, its creditors, its equity security holders, any other party in interest in this case, or their respective attorneys and accountants, except as set forth below:

A.  Connection with the Debtor's equity security holders:  League Park does not presently have any known connection with the Debtor's equity security holders.  As a regional firm, League Park may in the past have had advisory or other commercial or professional relationships with such entities completely unrelated to the Debtor's bankruptcy case.  League Park may, in the future, have advisory or other commercial or professional relationships with such entities; however, will not undertake such relationships while the Debtor's bankruptcy case is pending.

B.  Connection with the Debtor's creditors and other interested parties:  the Debtor has many creditors and many interested parties with whom it maintains business relationships. As a regional firm, League Park may have (or has had in the past) advisory or other commercial or professional relationships with such entities or persons completely unrelated to the Debtor or its business affairs.  No such relationships are related to the Debtor's case.  More specifically, League Park may have in the past represented, may currently represent, and likely in the future

2

will represent, parties-in-interest in this case in connection with matters unrelated to the Debtor and its chapter 11 case.

      C.      Connection with attorneys, its creditors, its equity security holders, and other interested parties: League Park participates in numerous cases and matters involving many different attorneys, some of which may represent claimants and interested parties with respect to the Debtor and its estate. Furthermore, League Park has in the past, and may in the future, be represented and/or retained by attorneys and law firms, some of whom may be involved in the Debtor's case. In addition, League Park has in the part and likely will in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor's case. Based on my current knowledge, none of these business relations constitutes an interest materially adverse to the Debtor herein in matters upon which League Park is to be employed.

      5.      In determining its disinterestedness in this matter, League Park reviewed its list of current clients. League Park believes that these efforts were reasonable. League Park intends to update its review and disclose any other or further relationship when and if they become known, as necessary and proper.

      6.      To the best of my knowledge, information and belief, neither League Park nor I represent any interest adverse to the Debtor or to its estate.

      7.      All of the information contained the in Application is true and accurate to the best of my knowledge, information, and belief.

3

FURTHER AFFIANT SAYETH NAUGHT.

_____
J.W. Sean Dorsey

SWORN TO and subscribed before me this _4th_ day of July 2010.

Notary Public: _____

Printed: _Brian E. Powers_

My commission expires: _Attorney, No expiration_

BRIAN E. POWERS, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date
Section 147.09 R. C.

4075277.1

4

# EXHIBIT B



June 30, 2011

**PERSONAL & CONFIDENTIAL**

Mr. John W. Grabner
President
Cardinal Fastener & Specialty Co., Inc.
5185 Richmond Road
Bedford Heights, OH 44146-1330

<strong>Re:    Engagement Letter</strong>

Dear John:

We are pleased Cardinal Fastener & Specialty Co., Inc. (the "Company") has, subject to approval by the United States Bankruptcy Court for the Northern District of Ohio, retained League Park Advisors LLC ("League Park") to act as its exclusive financial advisor and investment banker to assist the Company in relation to (i) a sale in one or more transactions or other disposition of all or a substantial portion of the assets of the Company pursuant to section 363 of the U.S. Bankruptcy Code (the "Code") or a similar transaction to be implemented pursuant to a chapter 11 plan of reorganization or otherwise (a "Sale"), (ii) a recapitalization of the Company's balance sheet including the restructuring and/or rescheduling of the existing capital structure pursuant to a chapter 11 plan of reorganization or otherwise (a "Recapitalization"), (III) a private placement of debt or equity financing to fund the Recapitalization (a "Private Placement"), (iv) a debtor-in-possession financing ("DIP") to fund the Company on an interim basis, and (v) any other matters the Company may reasonably request upon terms satisfactory to League Park in connection with its chapter 11 proceeding or otherwise.  Each of a Sale, Recapitalization, Private Placement, or DIP is collectively referred to herein as a "Transaction."  The purpose of this letter is to detail the terms and conditions of our mutual agreement (the "Agreement").

1. **Nature of Engagement**.  Throughout this engagement, League Park will work at the reasonable request and direction of the Company.  League Park's services may be provided in connection with the execution and closing of one or more Transactions.  Such services may be reasonably expected to include: compiling, updating and supplementing materials to be used in marketing a proposed Transaction to potential parties as approved by the Company; identifying and contacting such potential parties as approved by the Company; preparing and negotiating confidentiality agreements to be entered into with such potential parties; preparing management presentations for certain parties as selected by the Company; compiling,

updating and supplementing due diligence and other data room materials; and negotiating the terms and conditions of the Transaction. League Park will assist the Company in presentations, discussions and negotiations with the Company's current lenders, creditors, and investors relating to any potential Transaction. At the Company's request, League Park will make appropriate presentations regarding the Company and its strategic alternatives to holders of the Company's loans and specified trade debt (the "Creditors"), and also at the Company's request negotiate with Creditors to provide extensions, modifications, or other material changes, including without limitation a compromise and settlement or other restructuring of the Company's obligations to its Creditors (a "Settlement") to allow the Company to pursue or consummate a Transaction or other strategic alternative. League Park will not have the authority to bind the Company or its shareholders to any third party with respect to any Transaction. Throughout this engagement, League Park is authorized and instructed to discuss its activities as investment banker to the Company, including the sale process, directly with Wells Fargo Bank, N.A. ("Bank"), its counsel and other representatives and respond to their inquiries regarding the sale process. League Park shall furnish Bank with copies of all work product (including, without limitation, all financial information, due diligence materials, presentation materials, reports, lists of parties contacted as potential buyers, opinions and notices) League Park delivers to the Company during the term of League Park's engagement by the Company, along with all such other materials and information as Bank reasonably requests from time to time.

2. **Company Representations and Warranties.** The Company warrants and represents that all information regarding the Company provided or otherwise made available to League Park by or on behalf of the Company will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections regarding the Company provided by it to League Park will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company acknowledges and agrees that, in rendering services hereunder, League Park will be using and relying on the information provided by and on behalf of the Company without independent verification or appraisal. League Park assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company or any other information regarding the Company provided or otherwise made available to League Park.

3. **Compensation.** As consideration for League Park's services as set forth above, the Company shall pay to League Park a nonrefundable cash retainer (the "Retainer") of $5,000 immediately upon entry of a final order by the Bankruptcy Court approving this Agreement and thereafter per month due on the last day of each month, beginning July 31st, 2011, and $500 per hour for time spent to prepare for and provide testimony during a legal proceeding. In addition, upon completion of a Transaction, the Company shall pay to League Park a cash fee (the "Success Fee") at the closing of any Transaction. The Success Fee shall be equal to:

   a. In the event of a Sale, the greater of $250,000 or 5.0% of the Consideration in connection with the Transaction. "Consideration" shall mean the aggregate value of all cash, securities and other property paid in connection with the Transaction, including all indebtedness of the Company repaid or assumed, directly or indirectly, (by operation of law or otherwise), equity interest retained, and/or net value of retained assets in connection with the Transaction. In the event that the Consideration received in a Transaction is paid in whole or in part in the form of securities or other property, then, for purposes of calculating League Park's fees hereunder, the value of such securities or other property shall be the fair market value thereof on the day

2

immediately preceding the consummation of the Transaction; provided, however, that if such securities consist of securities with an existing public trading market, the value thereof shall be determined by the average of the last sales prices of such securities on the 30 trading days immediately preceding the consummation of the Transaction. Any amounts payable to the Company, any shareholder of the Company or any affiliate of the Company in connection with a noncompetition, employment, consulting, licensing, supply or other agreement shall be deemed Consideration, except in the case of employment or consulting agreement to the extent such amounts represent the fair value of services to be rendered. If all or a portion of the Consideration payable in connection with the Transaction includes contingent future payments, then the Consideration related to such payments shall equal the present value of the reasonably expected maximum amount of such payments (as such amount is determined in good faith between the Company and League Park) using a discount rate of five percent (5%).

    b.   In the event of a Recapitalization, $100,000, plus if in the Recapitalzation, capital is raised, the Success Fee shall be (i) 2.0% of the face amount of any senior debt secured by the Company, plus (ii) 4.0% of the face amount of any junior or subordinated debt secured by the Company, plus (iii) 6.0% of the face amount of any equity or equity-linked securities secured by the Company.

    c.   In the event of a DIP financing secured by the Company during a pendency of a bankruptcy case, the Success Fee shall be 2.0% of the face amount of any debt secured by the Company; provided, however, that should the party providing the DIP financing also be party to any other subsequent Transaction, the Success Fee earned in connection with the DIP financing shall be credited toward the Success Fee earned in connection with the subsequent Transaction.

4. **Expenses**.  Whether or not a Transaction is consummated, the Company shall reimburse League Park within thirty (30) days of receipt of invoice, for reasonable out-of-pocket and incidental expenses incurred during the term of its engagement hereunder; provided, however, such amount shall not exceed $10,000 unless League Park shall have received the prior written consent of the Company.

5. **Indemnification.**  Since League Park will be acting on behalf of the Company in connection with its engagement hereunder, the Company has agreed to indemnify League Park, certain related entities and their controlling persons, representatives and agents as set forth in the indemnification agreement attached hereto as Schedule A, the terms of which are hereby incorporated by reference herein and made a part hereof.

6. **Other Terms and Conditions.**

    a.   Company agrees to use its best efforts to obtain court approval of League Park's retention pursuant to section 327(a) of the Code concurrent with Company's attempts to retain its other professionals.  Any retention application or order shall be provided to League Park prior to Company's filing such papers with the Court and shall be in form reasonably satisfactory to League Park.  League Park acknowledges receipt of the Company's list of secured creditors, twenty largest unsecured creditors, and equity holders, in order for League Park to perform its own "disinterestedness" analysis as required by section 327(a), and within the meaning of 101(14) of the Code.  League Park shall provide an affidavit of its disinterestedness to the Company promptly thereafter.  The Company agrees that League Park is to be compensated in accordance with the terms of this Agreement on a current basis, although League Park

3

agrees to seek approval of such fees with the Court as the Court may order and in accordance with the Code. The Company recognizes and acknowledges that this Agreement has no force and effect, and neither League Park nor the Company have any obligation to perform hereunder, if League Park is not retained as a duly authorized professional of the Company upon a chapter 11 filing of the Company pursuant to an order of the Court.

b.  The Company agrees that League Park has the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, and to otherwise publish tombstone or other announcements upon the consummation of the Transaction, provided the Company has the right to review and approve such announcements prior to publication, such approval not to be unreasonably withheld.

c.  Any party hereto may terminate this Agreement at any time upon forty-five (45) days' prior written notice, without liability or continuing obligation except as set forth in the remainder of this paragraph. Neither the termination nor completion of this engagement shall affect (i) any compensation earned by League Park up to the date of termination or completion, (ii) any compensation to be earned by League Park after termination hereof in the event a Transaction is consummated within 12 months commencing on the date of termination of this Agreement, provided that such Transaction is consummated with a party contacted by League Park before termination of this Agreement, (iii) the reimbursement of expenses incurred by League Park up to date of termination or completion, or (iv) the provisions of paragraphs 5 and 6 hereof, inclusive, which provisions shall survive any termination of this Agreement.

d.  This Agreement shall inure to the sole and exclusive benefit of League Park and the Company and their respective successors and the indemnified parties hereunder and their respective successors and representatives. The obligations and liabilities under this Agreement shall be binding upon League Park and the Company.

e.  The Company acknowledges that (i) it is a sophisticated business enterprise and that the rights and obligations of the parties hereto are contractual in nature, (ii) League Park has made no warranties or guarantees with respect to the success of any Transaction, and (iii) League Park has no fiduciary duties or obligations to the Company or its shareholders by virtue of this Agreement.

f.  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

g.  This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by both parties.

h.  This Agreement constitutes the entire Agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof.

i.  Notwithstanding anything contained herein to the contrary, the Company shall not be liable for any fees, costs, or expenses, including a Success Fee, resulting due to a Transaction involving non-Company assets, including without limitation any Transaction involving Cardinal Property Management LLC, any and all of which such Transactions shall be pursuant to separate agreement.

4

If the foregoing correctly sets forth our mutual understanding, please sign below and return to us an executed copy of this letter, whereupon this letter shall constitute a binding agreement as of the date first above written.

**LEAGUE PARK ADVISORS LLC**

John W. Dorsey
Managing Director

**AGREED TO AND ACCEPTED BY:**

**CARDINAL FASTENER & SPECIALTY CO., INC.**

By: _____
     John W. Grabner, President

5

### SCHEDULE A

### INDEMNIFICATION PROVISIONS

To the fullest extent lawful, the Company will promptly, upon demand, indemnify and hold harmless League Park Advisors LLC and its affiliates (collectively, "League Park"), and each director, officer, employee, agent, manager, member and controlling person of League Park (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including, without limitation, expenses, fees and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several), (collectively, "Losses"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute, including security holder actions (whether or not League Park or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to League Park or any other person by the Company or used by the Company in connection with the transaction contemplated by the engagement letter or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of League Park 's engagement, role, activities or the performance or nonperformance of professional services on the Company's behalf. The Company will not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily and directly from the willful misconduct, criminal act or gross negligence of any Indemnified Person seeking indemnification hereunder; but pending any such judicial determination, the indemnification and reimbursement obligations of the Company hereunder shall continue to apply. The Company also agrees that neither League Park nor any Indemnified Person shall have any liability to the Company, its owners, parents, creditors or security holders for or in connection with its engagement, except such liability for Losses incurred by the Company which are judicially determined to have resulted primarily and directly from League Park's willful misconduct, criminal act or gross negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the gross negligence, criminal act or willful misconduct of any such Indemnified Person) or insufficient to hold such Indemnified Person harmless, then the Company and League Park will contribute to the Losses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, in connection with League Park's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Company on the one hand and the Indemnified Person on the other, but also the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by League Park will not exceed the amount of fees actually received by League Park pursuant to League Park's engagement.

6